## CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

   v.

Samuel Leroy Terry

June 3, 1988

Case No. CL 85-000029

By JUDGE JACK B. COULTER

On February 4, 1985, Samuel Leroy Terry was adjudicated an habitual offender in open court. He was present during this civil proceeding, having been personally served on January 24, 1985, with an order to show cause why he should not be barred from operating a motor vehicle in accordance with the habitual offender laws of this Commonwealth. Accompanying the Show Cause Order was the Information filed by the Commonwealth's Attorney setting forth in detail the record of traffic offense convictions that brought Terry within the definition of an "habitual offender." They were identified as follows:

> Abstract of Conviction received from the Gen. Dist. Court of the City of Rke., certifying that Samuel Leroy Terry, 3121 Melrose Ave. N.W., Roanoke, Va. 24016, was convicted in that court on May 18, 1982, of "Drive on suspended O.L."

> Abstract of Conviction received from the Traffic Division Court of the City of Roanoke, certifying that Samuel Leroy Terry, 3121 Melrose Ave. N.W.,

Roanoke, Va. 24017, was convicted in that court on July 13, 1984, on "Driving On Suspended O.L."

Abstract of Conviction received from the Traffic Gen. Dist. Court of the City of Roanoke, certifying that Samuel Leroy Terry, 3121 Melrose N.W., Roanoke, Va., was convicted in that court on October 1, 1984, of "Drive on susp. O.L."

At no time did Terry raise any objection as to his being declared an habitual offender. Though given full opportunity and adequate, detailed advance notice he showed no cause why he should not be adjudicated an habitual offender; and, accordingly, he was.

Far more than twenty-one days after the entry of the court order of adjudication, on February 3, 1988, almost three years to the day, Terry filed a petition to declare the habitual offender adjudication null and void. He cited two reasons in his written petition and added a third at the hearing that was held on April 25, 1988. These grounds may be summarized as follows:

1. That he did not have the benefit of counsel at any of the trials at which he was convicted of driving on a suspended operator's license.

2. That he did not receive notice of his suspension that followed his conviction of July 13, 1984.

3. That even if he waived counsel at his hearings on May 18, 1982, and October 1, 1984, his purported waiver at the hearing on July 13, 1984, was not duly subscribed and sworn to before the judge as required by the official form (Form DC-335-4/80).

The threshold question of whether or not Terry can now challenge his habitual offender conviction, notwithstanding the requirements of Rule 1:1, must be answered in the affirmative. Such is the clear holding in *Mays v. Harris*, 523 F.2d 1258 (4th Cir. 1975), in which the federal court summarized in Headnote 3:

Habitual traffic offenders whose adjudications rest on invalid prior convictions can have such adjudications vacated. . . .

Reenforcing this decision is the recent "unpublished" memorandum opinion of Judge Bernard G. Barrow in *Brinson v. Commonwealth* (Court of Appeals, Record No. 0116-87-1, decided April 12, 1988), in which the court quoting earlier cases noted:

> If a judgment is void, "it may be assailed anywhere, at any time, in any way, by anybody. It is immaterial whether the assault be direct or collateral."

But neither *Mays* nor *Brinson* is otherwise authority to support the first two grounds of Terry's attack. The first ground, the contention that he did not have the benefit of counsel, became groundless when it was demonstrated at the hearing that Terry had waived his right to counsel during each of the trials at which he was convicted.

The second prong of the petitioner's argument that he did not receive notice of his suspension after his conviction on July 13, 1984, is likewise fatally flawed because the Commonwealth did all that it was required to do. Terry argues that the order relating to the conviction of July 13, 1984, was "not accepted by the addressee" when mailed to him on August 22, 1984. But what Terry did not disclose was that thereafter the order was legally served on him by posting on September 25, 1984. Posting is an acceptable and legal means of serving process as clearly authorized by § 8.01-296(3). The only restriction that prohibits service by posting within the habitual offender laws is found in § 46.1-387.5, which requires that the copy of the show cause order and transcripts of the defendant's driving record shall be served "in the manner prescribed by § 8.01-296(1)," which refers to personal service only. Furthermore, the defendant was actually present in court on July 13, 1984, pled guilty to the charge of driving on a suspended or revoked operator's license, second offense, and was actually required to serve five days in jail. He was aware of what the notice of suspension was to have told him.

The third argument advanced by the defendant, however, has more appeal. The Commonwealth has taken away this man's privilege to drive and hence his ability to earn

a living, not because he has proven to be a careless or reckless driver but because of the "technicality" of his not having had the money to pay off traffic fines. Before the government casts stones, it should be held accountable for the "technicalities" required of it. The waiver of counsel must be subscribed and sworn to before the judge in open court--or so the government form clearly mandates. This "technicality" was not observed. The waiver of counsel, therefore, was ineffective and hence his second conviction should not be counted. Accordingly, he does not have enough convictions within the definition of an "habitual offender" to justify removing him from the highway for a period of ten years and which would thereby subject him to a mandatory and unsuspendable penitentiary sentence of one year if he did drive in violation of such order of adjudication. If the Commonwealth expects its citizens to comply with the law and the rules associated therewith, it should do no less.

It is also worthy of inquiry as to whether or not the defendant when he pled guilty to the third charge of driving on a revoked license on October 1, 1984, did so "with full awareness of the consequences" of so pleading. Such is the type of question put to a defendant who is pleading guilty in Circuit court. *See* Rule 3A:8(b). If being adjudicated an habitual offender, which thereby prohibits one from driving for ten years, is a consequence of a third conviction of driving on a revoked license, then a defendant should be so advised in open court. If there is to be any meaning in requiring that guilty pleas are submitted intelligently and with a full knowledge of the consequences, such advice should become ritual under those circumstances which will result in a subsequent deprivation of the right and privilege of driving.

Since, however, this precise issue has neither been urged nor developed in the case at bar and its resolution is not necessary for a ruling on the petition, the opportunity to advance the law on this delicate question is postponed to a later day.

For the reasons aforesaid, therefore, the petition is granted, the order adjudicating Terry an habitual offender, is abrogated, vacated, and rescinded, and hereby declared null and void.